55 F.3d 362
 FEDERAL HOUSING PARTNERS IV, an Iowa Limited Partnership;
Sunflower Plaza Tower Company, a Kansas Corporation;
Ridgeway Associates, an Iowa Limited Partnership; Waterloo
Properties, an Iowa Limited Partnership; Cedar Falls
Associates, an Iowa Limited Partnership; Crossroads
Properties, an Iowa Limited Partnership; Federal Housing
Partners II, an Iowa Limited Partnership; Chamber of
Commerce of Sioux City, Iowa, an Iowa Non-Profit
Corporation; Goodwill Industries of Sioux City, an Iowa
Non-Profit Corporation; Klinger Properties, Inc., an Iowa
Corporation; Edmond J. Nauenburg; Betty L. Nauenburg;
Buffalo Associates, a Minnesota Partnership; Planned
Investment 83-1, a Minnesota General Partnership; Planned
Investment 84-1, a Minnesota General Partnership; Planned
Investment 86-1, a Minnesota General Partnership; Planned
Investment 86-2, a Minnesota Partnership; Planned
Investment 85-2, Ivanhoe, a Minnesota Limited Partnership;
Planned Investment 85-1, Liechfield, a Minnesota Limited
Partnership; M.F. Hendricks; Hyde Park Housing
Partnership, a Missouri Limited Partnership; Angeline St.
Mary's Partners, an Iowa Limited Partnership; Ernest J.
Gregoire; Prairie View Associates, a North Dakota
Partnership; Prairie View II, a North Dakota Limited
Partnership; Jerry L. Meide; Jamestown Plumbing and
Heating, a North Dakota Corporation; Warren Gallagher;
Lois Gallagher; Frank Gallagher; Eleanor Gallagher;
Michael Gallagher; Marlys Gallagher; Frank W. Gallagher;
Arbor Terrace Apartments, Ltd., an Iowa Limited Partnership;
The Meadow Apartments, Ltd., an Iowa Limited Partnership;
Regency Five Apartments, an Iowa Partnership; Bergangreen
Apartments, Ltd., an Iowa Limited Partnership; Pioneer
House, Ltd., a Missouri Limited Partnership; Oakwood
Terrace, Ltd., a Missouri Limited Partnership; North Valley
Townhomes, Ltd., a Missouri Limited Partnership; Green Oaks
Estates, Ltd., a Missouri Limited Partnership; Columbia
Square East; Columbia Square South; University Square;
Lane Apartments, Ltd., a Missouri Limited Partnership;
Branson Manor, Ltd., a Missouri Limited Partnership;
Brookfield Village, Ltd., a Missouri Limited Partnership;
Princeton Manor, Ltd., a Missouri Limited Partnership;
Prairie Plains, Ltd., a Missouri Limited Partnership;
Willow Creek, Ltd., a Missouri Limited Partnership;
Countryclub Tower, L.P., a Kansas Limited Partnership;
Eldon Properties, Ltd., a Missouri Limited Partnership;
Highland Meadows of Kansas, L.P., a Kansas Limited
Partnership; Crestview Village, Ltd., a Missouri Limited
Partnership; Autumn Park of Cherokee, an Iowa Corporation;
Autumn Park of Iowa City, an Iowa Partnership; Autumn Park
of Charton, an Iowa Partnership; Autumn Park of Washington,
an Iowa Limited Partnership; Valley View of Cherokee, an
Iowa Partnership; Prairie View Townhomes of North Platte,
Ltd., a Nebraska Limited Partnership; Valley View of Spirit
Lake, an Iowa Partnership; Platteview Associates, a
Nebraska Partnership; Autumn Park of Sheldon, an Iowa
Partnership; Autumn Park; Autumn Park of South Sioux City,
a Nebraska Partnership; Autumn Park of Hastings, a Nebraska
Partnership; Autumn Park of Mason City, an Iowa
Partnership; McPherson Apartments Company, a Kansas
Corporation; Shadyway Plaza Company, a Kansas Corporation;
West Park Tower Company, a Kansas Corporation; Sunflower
Plaza Tower Company, a Kansas Corporation; Summerset Plaza
Tower Company, a Kansas Corporation; Prairie Villa Company,
a Kansas Corporation; Peachtree Plaza Tower Company, a
Kansas Corporation; Park Plaza Tower Company, a Kansas
Corporation; Gordy Square Apartments Company, a Kansas
Corporation; Heritage House Apartments Company, a Kansas
Corporation, Plaintiffs-Appellants,
United Keetowah Associates, Ltd.; Cape Lacroix II, a
Missouri Limited Partnership; 17th Place Associates, an
Illinois Limited Partnership; Cardinal Apartment, Inc.;
Crescent Arms Associates; Nowata Gardens Apartment of
Chickasha, Oklahoma, Inc.; Western Village Apartments,
Ltd.; Forest Glen Estates, Inc.; Castle Gardens Charitable
Trust; The Atlantis Apartment, Inc.; Clyde B. Goldsmith;
Bernard L. Lifshutz; Southwood Patio Homes; Feliciana, a
Louisiana Partnership in Commendam; Concordia Limited
Partnership; Alouette Limited Partnership; Tangi Village
Limited Partnership; 3433 Tulane Avenue, a Louisiana
Partnership in Commendam; Forest Towers, Oklahoma, a
California Non-Profit Corporation; College Apartments,
Inc.; Yale Village Charitable Trust; Sierra Manor, Inc.;
Sunset Towers, Inc.; Highland Park, Inc.; Gulfway Terrace,
Incorporated; Robert W. Green; Hoover & Hoover, Ltd.;
Hoover Development, Ltd.; Better Housing, Inc.; Lipton
Properties III, Ltd.; Tower Oaks Partnership; Robert W.
Price, Sr.; Ted W. Price, Sr.; Ted W. Price, Jr.; Sasa
Limited Partnership; Allen Market Lane Apartments
Associates, a Missouri Limited Partnership; Blair School
Apartment Associates; Hamilton Development Associates;
Lindell Plaza Redevelopment Corporation; Minerva Place
Apartments Associates, a Limited Partnership; O'Fallon
Place Limited Partnership; O'Fallon Place Limited
Partnership, Phase II; O'Fallon Place Limited Partnership,
Phase III; Revive 103 Associates; West End Apartments
Associates; Madison Village, Ltd.; Arthur P. Gorman;
Robert H. Gardner; Vicksburg Village Limited; Ashley House
Associates; Hyatt Manor Limited; Valley High Associates;
Algood Manor, Ltd.; Kanis Properties, Ltd.; Asheboro
Properties, Inc.; Athens Properties, Ltd.; Bon Air
Associates; Bridge Creek Properties, Inc.; Brooksfield
Properties, Ltd.; Calhoun Properties, Ltd.; Cartersville
Properties, Inc.; Lakeview Properties, Ltd.; Columbia
Properties, Ltd.; Cumberland Properties, Ltd.; Dunlap
Properties, Ltd.; Eastman Properties, Inc.; Fayetteville
Properties, Ltd.; Forest Creek Properties, Inc.; Forsythe
Properties, Ltd.; Greenwood Properties, Ltd.; Lafollette
Properties, Ltd.; Loudon Properties, Ltd.; Macon
Properties, Ltd.; Manning Properties, Ltd.; Mauldin
Properties, Ltd.; Fitzgerald Housing Assoc., Ltd.; North
August Properties, Ltd.; Park Lake Properties, Ltd.;
Pebblebrook Properties, Ltd.; Pendleton Properties, Inc.;
Pickens Properties, Ltd.; Raleigh Properties, Ltd.;
Richmond Properties, Ltd.; Riverside Properties, Ltd.;
Idlewild Properties, Ltd.; Seneca Properties, Ltd.;
Sneedville Properties, Ltd.; Thomaston Properties, Ltd.;
Waynesboro Properties, Ltd.; Winston Properties, Inc.;
Azalea Woods, Ltd.; Marshall Arms Associates, Ltd.; Virgil
Eisenbiez; Lynn Oak Court Company; Cimarron Group, Inc.;
Eastbrook, Ltd.; Payne Lincoln Properties; Fox Ridge
Cooperative Townhouses, Inc.; Cody Plaza, a Kansas Limited
Partnership; Sullivan Hall Housing Partnership, a Missouri
Limited Partnership; Friendship Man Housing Partnership, a
Missouri Limited Partnership; Massey Park Housing
Partnership, a Missouri Limited Partnership; Northlawn
Gardens Limited Dividend Housing Association, a Michigan
Limited Partnership; Alabama Baptist Retirement Center,
doing business as Clara Verner Towers Apartments; Lakeview
Apartments, Ltd.; Logan Apartments, Ltd.; Knights Manor,
Inc.; Leslie E. Salone, doing business as Universal
Management; CMD Associates, Michigan Co-Partnership, doing
business as JG Properties; Veard Ottowa, Inc.; Veard
Gassaway, Ltd.; Homes Cases, Inc.; Waterside Estates;
Lakeview Estates, Ltd.; Terrill Commons, Ltd.; Veard
Parsons, Ltd.; River Hill Limited; Terraced Park Limited;
Princeton Park Apartments, Ltd.; Barron Builders and
Management Company; Taven Apartments, a Limited
Partnership; Columbia Apartments; Garden City Apartments
Limited; Centrex North Redevelopment Corporation; Paul
Tipps Enterprises # 1; Holden House Associates, an Ohio
Ltd. Partnership; Urban Properties No. 2, also known as
Holt Manor; Fairwood Manor Development Company; East Mall
Associates; Casco Associates; Urban Properties # 1; Paul
Tipps Enterprises # 2; Carpenter's Associates; Paul Tipps
Enterprises # 4; Belton Garden Associates; Blacherne
Associates; Anthony Arms Associates; Academy Associates;
Federal American Properties; Liberty Park Development
Company; Logan Hill Assoc.; Meadow Village, Ltd.;
Parkview Place Company; Penn Circle Tower Development
Company; Jasper Housing Development Company; Savoy Hoosier
Associates; Southern Oaks Apartments, Inc.; Baytown Urban
Development, Ltd.; Weyerbacher Terrace Associates; Henry
Fredricks; Cane Gardens Ltd. Partnership; Princeton Park,
Ltd.; River Hill, Ltd.; Country Meadows Apartments;
Terrace Park, Ltd.; F.L. Richards; Sanders Heights Apts.,
an Oklahoma Limited Partnership; Village Dulac, Inc.;
National Church Residences of Buffalo, NY; National Church
Residences of Baltimore; National Church Residences of
Middletown; National Church Residences of Gahanna;
National Church Residences of Sharpsburg, Pennsylvania,
Inc.; National Church Residences of Ceredo, West Virginia,
Inc.; National Church Residences of Bristol Village;
West Virginia Homes, Inc.; George Maharg; Jaycom
Charitable Trust; Robert Pesa; Patterson Apartments, a
Michigan Partnership; Branchwood Assoc. of Hardeeville;
Baytree Associates of Ridgeland; Cambridge Association of
Lamar; Spruce Pines Associates of Landrum; Tall Pines
Associates of Loris; Walterboro Village Associates; Willow
Oaks Associates of Cowpens; Amberly Apartments Associates;
Eastpointe Apartments Associates; Ashwood Apartments
Associates; Southfield Townhouses Associates; Kettering
Square Apartments Associates; Woodview Manor Associates;
Southmoor Associates; Lincoln Hills Development
Corporation; Joseph Herzig; Barbara Herzig; Barton House
LDHA; Elizabeth Arms Limited Partnership; Broad River
Limited Partnership; Parkwood South Limited Partnership;
Bethlehem Village Limited Partnership; Profit Hills Limited
Partnership; Whitney Young Terrace Limited Partnership;
National Church Residences of Chillicothe, Ohio;
Roth-Helfman Associates, Ltd., a Michigan Partnership,
Intervenors-Appellants,
v.
Henry G. CISNEROS, Secretary of the United States Department
of Housing and Urban Development, Defendant-Appellee.
 No. 94-1416.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 17, 1994.
Decided May 12, 1995.
 
 Warren J. Daheim, Tacoma, WA, argued (Donald W. Hanford appeared on the brief), for appellants.
 Larry Derryberry and George W. Velotta, II, Oklahoma City, OK, on the brief, for intervenors/appellants.
 Sushma Soni, Dept. of Justice, Washington, DC, argued (Douglas N. Letter, John W. Herold, Howard M. Schmeltzer, and Barton Shapiro, on the brief), for defendant/appellees.
 Before BEAM, Circuit Judge, CAMPBELL,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.
 MORRIS SHEPPARD ARNOLD, Circuit Judge.
 The issue in this action is whether landlords to whom the government paid subsidies were entitled to automatic rental adjustments, even if market studies showed that such adjustments resulted in rents higher than those in the local market. In light of Cisneros v. Alpine Ridge Group, --- U.S. ----, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993), we conclude that they are not so entitled and affirm the district court.[1]
 I.
 Congress created the Section 8 housing program in 1974 to subsidize landlords who accept low-income tenants. Tenants made rental payments based on their income and ability to pay, and HUD then made assistance payments to the private landlords in an amount calculated to make up the difference between the tenant's contribution and a contract rent initially agreed upon by the landlord and HUD.
 The relevant statute provided that the initial contract rents would be adjusted at least annually "to reflect changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units or, if the Secretary determines, on the basis of a reasonable formula." 42 U.S.C.A. Sec. 1437f(c)(2)(A). The statute also charged that adjustments in the contract rent could "not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Secretary." 42 U.S.C.A. Sec. 1437f(c)(2)(C) (1982) (amended 1989). Accordingly, the contracts provided that rental adjustments would be made through Automatic Annual Adjustment Factors ("AAAFs") published in the Federal Register. But the contracts also provided that "[n]ot withstanding [sic] any other provisions of this Contract, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government[.]" See, e.g., J.A., vol. 2, p. 194, Housing Assistance Payments Contract Sec. 1.8d (this clause appears as Sec. 1.9d in many Section 8 contracts).
 
 
 1
 From 1974 to 1981, HUD made rental adjustments according to the AAAFs. In 1981, HUD suspected that AAAF-adjusted assistance payments to some landlords were excessive, and began to conduct "comparability studies" in certain real estate markets where it believed that the subsidies, adjusted upward by the automatic adjustment factors, resulted in rents materially higher than market rents. In these studies, HUD personnel selected several comparable apartment buildings and compared their unassisted rents with the rents in the Section 8 building. The comparable rents were used to limit the rent payments HUD would make under the contract.
 
 
 2
 In 1989, in response to litigation over AAAFs and comparability studies, Congress amended Section 8 to provide explicitly that HUD could limit automatic rent adjustments through the use of comparability studies, but required HUD to write and publish administrative regulations for conducting such studies in the future. See Section 801 of the Department of Housing and Urban Development Reform Act of 1989, Pub.L. No. 101-235, 103 Stat.1987 (codified at 42 U.S.C.A. Sec. 1437f). Congress also gave the landlords a portion of what they might have received if they had been entitled to AAAFs, and designated this scheme as the "exclusive method" for resolving past Section 8 rent subsidy disputes. See 42 U.S.C.A. Sec. 1437f note.
 
 
 3
 After Congress passed Section 801, some landlords brought suit, alleging that the Congressional amendments violated the due process clause of the Fifth Amendment by stripping them of their vested rights to annual contract rent increases based on the AAAFs alone. In Cisneros v. Alpine Ridge Group, --- U.S. ----, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993), the Supreme Court concluded that the assistance contracts themselves permit comparability studies because they recognize that landlords are not entitled to rents in excess of going market rates, regardless of what rents the application of AAAFs might generate. The Supreme Court concluded:
 
 
 4
 In sum, we think that the contract language is plain that no project owner may claim entitlement to formula-based rent adjustments that materially exceed market rents for comparable units. We also think it clear that Sec. 1.9d--which by its own terms clearly envisions some comparison "between the rents charged for assisted and comparable unassisted units"--affords the Secretary sufficient discretion to design and implement comparability studies as a reasonable means of effectuating its mandate. In this regard, we observe that Sec. 1.9d expressly assigns to "the Government" the determination of whether there exist material differences between the rents charged for assisted and comparable unassisted units. Because we find that respondents have no contract right to unobstructed formula-based rent adjustments, we have no occasion to consider whether Sec. 801 of the Reform Act unconstitutionally abrogated such a right.
 
 
 5
 Cisneros, --- U.S. at ---- - ----, 113 S.Ct. at 1904-05.
 
 
 6
 The instant suit was filed as a class action seeking a declaratory judgment on behalf of numerous Section 8 landlords that they had suffered a due-process violation and were entitled to AAAF-adjusted rents. The district court stayed the action pending the Supreme Court's decision in Cisneros. After the stay was lifted, the government moved for summary judgment. In light of Cisneros, the district court concluded that the landlords lacked the necessary property right--an unqualified right to the AAAFs--that would enable them to proceed with a due-process challenge to Section 801 and the effects of the comparability studies.
 
 II.
 
 7
 The landlords' argument that they are entitled to AAAF-adjusted rents comprises three steps: (1) HUD's attempt to execute comparability studies violated their right to procedural due process because HUD did not create nationwide standards for implementing such studies; (2) because the comparability studies violated constitutional standards, plaintiffs' right to AAAFs became vested since AAAFs were the "presumptive" method of calculating rents under their contracts; (3) Section 801 therefore unconstitutionally abrogated plaintiffs' vested contract right to AAAFs by providing an "exclusive remedy" for disputes over AAAFs and comparability studies. Simply put, the landlords believe that if they discredit the studies, they should receive the AAAFs.
 
 
 8
 Before a litigant can prevail on a claim alleging a due-process deprivation of a property right, he must first show an entitlement to the property right. See Carolan v. Kansas City, 813 F.2d 178, 181 (8th Cir.1987). Here, the landlords failed to prove that they had a vested property right to the AAAFs as the "presumptive method" of adjusting rents. The contention that AAAFs are the presumptive method of adjusting rents is incorrect by the terms of the contracts. While AAAFs might be the norm for practical reasons, the overriding principle set forth in the contracts is that "[AAAFs] shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government[.]" Because of this contractual clause, "no project owner may claim entitlement to formula-based rent adjustments that materially exceed market rents for comparable units." Cisneros, --- U.S. at ----, 113 S.Ct. at 1904. HUD's discretion to make rental comparisons and rent adjustments under the contracts prevented AAAFs from ever becoming a property right vested in landlords whose rents were materially different from comparable unassisted units. Only where AAAF-adjusted rents did not result in material differences between assisted and comparable unassisted units may the right to AAAFs vest in any particular landlord. The landlords have argued for an AAAF increase without a showing on the issue of comparability. Their attempt to cast doubt upon the studies does not entitle them to AAAFs, since the remedy for an improper study is simply a better study. Because we have determined that the right to AAAFs never vested under the terms of the contracts, we need not reach the constitutional issue of whether the landlords were deprived of procedural due process when HUD conducted the comparability studies. See Cisneros, --- U.S. at ----, 113 S.Ct. at 1905.
 
 
 9
 The Intervenors, other landlords who joined in the action, base a similar argument on a somewhat different premise. They maintain that rulemaking procedures under the Administrative Procedures Act ("APA") were required before HUD could perform comparability studies, and that, as a result of HUD's failure to abide by the APA, the comparability studies are invalid and the landlords are entitled to AAAFs instead. We do not see how a failure to follow APA procedures could have given rise to a property right to AAAFs unqualified by comparable local rents, a result necessarily contrary to the contracts, the statute, and Cisneros. The statute and the contracts define the property right before us, not the APA. Even if the APA were otherwise applicable in the circumstances of this case, Congress has provided an "exclusive remedy" for disputes over comparability studies in Section 801, which we must regard as more recent and more specific statutory guidance than the APA.
 
 III.
 
 10
 For the foregoing reasons we affirm the judgment of the district court.
 
 
 
 *
 The HONORABLE LEVIN H. CAMPBELL, Senior United States Circuit Judge for the First Circuit Court of Appeals, sitting by designation
 
 
 [1]
 The Honorable William G. Cambridge, United States District Judge for the District of Nebraska, acting on the recommendation of United States Magistrate Judge Kathleen A. Jaudzemis